IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES HUGHES and : | |
| MELISSA HUGHES, ET AL. : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 14-3822 |
| UNITED PARCEL SERVICE, INC., ET AL. : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                          **MARCH 6, 2015**

      Presently before the Court is the Motion to Dismiss Plaintiffs' First Amended Complaint filed by Defendant, International Brotherhood of Teamsters, Local 623 (the "Teamsters") (ECF No. 11) and the Defendant, United Parcel Service, Inc.'s (UPS) Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 16). For the following reasons, Defendants' Motions will be granted.

**I.    BACKGROUND**

      This is a labor dispute where Plaintiffs, James Hughes and John K. Hughes, seek to recover wages allegedly earned but not paid. Plaintiffs assert various state law causes of action, including breach of contract / breach of the duty of fair representation, violation of the Pennsylvania Wage and Payment Collection Law (WPCL), 43 P.S. § 260 *et seq.*, unjust enrichment, and loss of consortium. Plaintiffs also assert a federal cause of action for violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (Pls.' First Am. Compl., ECF No. 9.) Defendants move to dismiss Plaintiffs' First Amended Complaint, asserting that all of Plaintiffs' claims are preempted under "Section 301" of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and because Plaintiffs have failed to exhaust their administrative remedies, as required under § 301.

### A.     Factual Background

Plaintiffs James and Melissa Hughes are husband and wife, and Plaintiffs John K. Hughes and Beverly Hughes are husband and wife.  (Pls.' First Am. Compl. ¶¶ 3-4.)  In 2002, James and John Hughes (hereinafter "Plaintiffs") became employed with UPS and joined the Teamsters union.  (*Id*. at ¶¶ 8-11.)  They both held part-time positions as "air drivers," and were not able to secure full-time positions due to their seniority level within the Teamsters.  (*Id*. at ¶¶ 10-12.)  As of January 2012, they remained in the same part-time positions earning wages at an hourly rate of $23.70.  (*Id*. at ¶¶ 13-14.)  At all times material, the employment of Plaintiffs with UPS was governed by a collective bargaining agreement (CBA).  (*Id*. at ¶ 26.)

In January 2012, Plaintiffs became aware of full-time position openings.  (*Id*. at ¶ 13.) They inquired of certain leadership members of the Teamsters as to whether the full-time positions would lead to a change in their rate of pay, and were told their hourly rate of $23.70 would not change.  (*Id*. at ¶¶ 15-16.)  "Based upon these representations, the collective bargaining agreement, and the job descriptions for the full-time positions, Plaintiffs applied for and were hired by [UPS] for full-time employment as air drivers."  (*Id*. at ¶ 17.)

Shortly after beginning their new full-time roles, Plaintiffs discovered that their hourly rate of pay decreased to $13.50 and their seniority was eliminated.  (*Id*. at ¶¶ 18-19, 22.)  They contacted a representative of UPS and the National Labor Relations Board for assistance.  This was not successful. (*Id*. at ¶ 20.)  In addition, Plaintiffs allege that they filed grievances with the Teamsters concerning this wage decrease.  (*Id*. at ¶ 21.)  Plaintiffs' First Amended Complaint contains no factual allegations that Plaintiffs proceeded with or exhausted the administrative remedies available under the CBA.

B.     **Procedural Background**

Plaintiffs began this action by filing a Complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania on June 4, 2014.  (Notice of Removal ¶ 1, ECF No. 1.)  The Teamsters removed the action to this Court on the basis of federal question jurisdiction on June 19, 2014.  (*Id*.)  On July 31, 2014, following a Motion to Dismiss filed by the Teamsters (ECF No. 7), Plaintiffs filed a First Amended Complaint.  The Teamsters filed a Motion to Dismiss the First Amended Complaint on July 31, 2014.  UPS filed a similar Motion on August 19, 2014.  Plaintiffs filed an Omnibus Response on September 3, 2014.  (ECF No. 19.)  UPS filed a Reply on October 9, 2014 (ECF No. 22), and Plaintiffs filed a Surreply on November 5, 2014 (ECF No. 25).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  Nevertheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald

assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997). "In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

## III. DISCUSSION

As noted above, Defendants move to dismiss Plaintiffs' First Amended Complaint on the basis that Plaintiffs' claims are preempted by § 301 of the LMRA. In addition, Defendants contend that Plaintiffs failed to exhaust their administrative remedies under the CBA, as is required by § 301.[1]

### A. Defendants' Attachment and Reliance Upon the CBA

Plaintiffs did not attach a copy of the CBA to their Amended Complaint. They alleged that the CBA was in the possession of Defendants. (First Am. Compl. ¶ 26.) Defendant UPS did attach a copy of the CBA to its Motion. The Teamsters did not attach a copy of the CBA to their Motion; they do however attach certain sections of the CBA relied upon in their Motion.

In their Omnibus Response to Defendants' Motions, Plaintiffs advise the Court that they are dismissing without prejudice all of their federal claims pursuant to Federal Rule of Civil Procedure 41 and that they are relying on their state law claims. They then object to Defendants' Motions in so far as they rely on the CBA. Plaintiffs assert that the CBA is "inadmissible (at this stage)."

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

---

[1] In the alternative, Defendants argue that Plaintiffs' claims are time barred by the six-month statute of limitations in § 301. Since we find preemption under § 301 to be dispositive, we need not reach the statute of limitations argument.

4

1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). There is, however, an exception to this rule. "'[A] document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Id*. (citation omitted) (emphasis original) (internal alterations original); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

Plaintiffs' Complaint alleges the following with regard to the CBA:

> 17. Based on these representations, *the collective bargaining agreement*, and the job descriptions for the full-time positions, Plaintiffs applied for and were hired by Defendant, UPS for full-time employment as air drivers.
>
> . . .
>
> 26. At all times material, *Plaintiff's employment with Defendants was subject to a collective bargaining agreement* ("CBA"). [In possession of Defendants].
>
> . . .
>
> 28. *Defendants breached the CBA* by paying Plaintiffs at a rate of $23.70/hour [sic], instead of $13.50/hour [sic].
>
> . . .
>
> 30. As a result of *Defendants' breach of the CBA* and the covenant of good faith and fair dealing, Plaintiffs sustained significant economic loss and emotional distress.

(Pls.' First Am. Compl. ¶¶ 17, 26, 28, and 30) (emphasis added) (bracketed text in original). These allegations are then incorporated into each Count forming the basis of each cause of action asserted by Plaintiffs. (*Id*. at ¶¶ 31, 34, 38, and 40.)

Based upon Plaintiffs' allegations, it is apparent that the CBA is integral to and explicitly

relied upon in the First Amended Complaint. Plaintiffs' causes of action are based entirely on their employment relationship with UPS, which is governed by the CBA, and Defendants' breach of that CBA. Plaintiffs incorporated each of the above cited allegations into each Count of their First Amended Complaint. Their reliance upon the CBA is clear. Plaintiffs cannot avoid the application of federal law and specifically § 301 of the LMRA by simply stating that they are abandoning their federal claims. The CBA is integral to and explicitly relied upon by Plaintiffs in their First Amended Complaint. They cannot deny Defendants the right to rely upon the very CBA that forms the basis of their relationship with their employer, and that forms the basis of each of their claims. Defendants' attachment of the CBA to their Motions to Dismiss, and their reliance upon the CBA, is perfectly proper.

      B.      **The Preemption of Plaintiffs' Claims Under Section 301**

In support of their Motions to Dismiss, Defendants contend that Plaintiffs' claims—both state and federal—are preempted by § 301. We agree.

It is a tenet of labor law in the United States that federal law preempts state law claims resting upon the terms of a collective bargaining agreement. In *Local 174, Teamsters v. Lucas Flour Company*, the Supreme Court held that, in a dispute concerning the terms of a collective bargaining agreement, "incompatible doctrines of local law must give way to principles of federal labor law." 369 U.S. 95, 102 (1962). Relying upon the compelling interest "for a single body of federal law," the Court held "we cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Id*. at 104. The Supreme Court later expanded the holding of *Lucas Flour* in *Allis-Chalmers Corporation v. Lueck*, 471 U.S. 202 (1985). In *Allis-Chalmers*, a plaintiff, employed pursuant to a collective bargaining agreement, filed suit in state court against his employer alleging bad faith

6

with respect to the handling of his disability claim.  *Id*. at 205-06.  The Supreme Court of Wisconsin held the plaintiff's claims to be state law based and not preempted by § 301.  *Id*. at 207-08.  The United States Supreme Court reversed, holding "that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law."  *Id*. at 220 (internal citation omitted).

Third Circuit caselaw follows the mandates of *Lucas Flour* and *Allis-Chalmers* when analyzing claims under the WPCL.  In *Wheeler v. Graco Trucking Corporation*, a plaintiff brought suit against his former employer for wages allegedly due, asserting various federal and state law claims which included, *inter alia*, a claim pursuant to the WPCL.  985 F.2d 108, 110 (3d Cir. 1993).  Applying *Lucas Flour* and *Allis-Chalmers*, the Third Circuit held that plaintiff's WPCL claim was preempted by § 301 because the "claim [was] based squarely on the terms of the collective bargaining agreement."  *Id*. at 113; *see also Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 829 (7th Cir. 1986) (holding federal law to preempt a wage claim under the Illinois Wage Payment and Collection Act); *Nicholas v. St. Agnes Med. Ctr.*, No. 84-5882, 1987 WL 5248, at *2 (E.D. Pa. Jan. 8, 1987) (holding federal law to preempt a wage claim under the WPCL).  The Third Circuit later reaffirmed the *Wheeler* holding in *Antol v. Eposto*, 100 F.3d 1111, 1120 (3d Cir. 1996) ("On reflection however, it is clear that the holding was correct.").

Based upon the allegations in Plaintiffs' First Amended Complaint, it is clear that their state law claims—breach of contract, unjust enrichment, and violation of the WPCL—are squarely dependent upon the CBA.  Indeed, each of Plaintiffs' claims is based upon allegations that their employment relationship with UPS is governed by the CBA (First Am. Compl. ¶ 26), that it was pursuant to the terms of the CBA that James and John accepted the full-time positions

7

that are the subject of this litigation (*id*. at ¶ 17), that Defendants breached the terms of the CBA (*id*. at ¶ 28), and that as a result of Defendants' breach of the CBA, Plaintiffs suffered damages (*id*. at ¶ 30).  While Plaintiffs do not suggest which specific terms of the CBA are at issue, their pleading makes it abundantly clear that it is the terms of the CBA that form the basis of their claims.  The questions of whether Defendants breached the terms of the CBA, whether Defendants were unjustly enriched due to a breach of the CBA, and whether Defendants are liable under the WPCL based upon a breach of the CBA, all require an interpretation of the terms of the CBA.  The CBA is not ancillary to Plaintiffs' claims; rather, the CBA is at the heart of each cause of action.  Plaintiffs' claims are substantially based upon an interpretation of the CBA.

      Plaintiffs correctly note that not all state law claims are preempted by § 301 where the claims are not entirely dependent upon an analysis of the CBA.  (Pls.' Omnibus Resp. 9.)  However, such is not the case here.  "[A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 (1987) (citing *Allis-Chalmers*, *supra*) (emphasis original).  Plaintiffs did not premise their theories of recovery upon an alleged agreement outside of the CBA.  Rather, Plaintiffs put the CBA squarely at issue by alleging that Defendants breached the CBA and that Plaintiffs suffered injury as a result of that breach.  This is the basis of each of their claims.

      In deciding Defendants' Motions pursuant to Rule 12(b)(6), we are limited to accepting as true the allegations set forth in Plaintiffs' First Amended Complaint.  Taking Plaintiffs' allegations as true, Plaintiffs' breach of contract claim, unjust enrichment claim, and WPCL

claim are all entirely dependent upon an analysis of the CBA. (Pls.' First Am. Compl. ¶¶ 17, 26, 28, 30, 31, 34, 38, and 40.) Since Plaintiffs' state law claims are entirely dependent upon an analysis and interpretation of the terms of the CBA, Plaintiffs' claims are preempted by § 301. *Allis-Chalmers*, 471 U.S. at 220; *see also Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1536 (3d Cir. 1992) ("Supreme Court precedent unequivocally instructs us to resolve disputes concerning collectively bargained labor agreements pursuant to federal labor law rather than state law.").

### C. The Administrative Remedy Requirement Under Section 301

"As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by the employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) (emphasis in original); *see also Angst*, 969 F.2d at 1537 ("Under federal labor law, aggrieved employees must exhaust their CBA's grievance and arbitration procedures before filing a complaint in federal court.").

The CBA to which Plaintiffs and UPS are subject defines "grievance" as "any controversy, complaint, misunderstanding or dispute as to the interpretation, application or observance of any of the provisions of this Agreement or Supplements hereto." (Def. UPS Mot. Ex. "A" Art. 49 Sec. 2.) The CBA then provides incremental steps for the grievance to be addressed, culminating in a mutually agreed to arbitration before the Atlantic Area Parcel Grievance Committee. (*Id*.) In their First Amended Complaint, Plaintiffs allege that they filed grievances with the Teamsters concerning their reduction in wages. (Pls.' First Am. Compl. ¶ 21.) The First Amended Complaint, however, is silent as to Plaintiffs pursuing grievances through the entire remedial process set forth in the CBA. Indeed, Defendants raised the argument in their Motions that Plaintiffs failed to exhaust their administrative remedies under the

CBA prior to filing suit. Plaintiffs have offered nothing in response.

Under the express terms of the CBA and pursuant to § 301, Plaintiffs were first required to exhaust their available administrative remedies prior to initiating this suit. Indeed, enforcing this requirement is at the very heart of a uniform federal labor law. "Permitting employees to sue in state courts in order to bypass arbitration not only dilutes its effectiveness, but calls into question its very existence. Non-exclusivity of arbitration 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.'" *Antol*, 100 F.3d at 1121 (quoting *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965)); *see also Lucas Flour*, 369 U.S. at 103. Since Plaintiffs have failed to exhaust the administrative remedies available to them under the terms of the CBA, Plaintiffs' claims for breach of contract, unjust enrichment,[2] and violations of the WPCL must be dismissed.

### D. Claims for Loss of Consortium

The claims for loss of consortium asserted by the spouses, Melissa Hughes and Beverly Hughes, must also be dismissed. Under Pennsylvania law, a claim for loss of consortium is entirely derivative of the spouse's claim; the claim would not exist but for the injuries to the spouse. *Ferguson v. United States*, 793 F. Supp. 107, 110 (E.D. Pa. 1992) (citing *Barchfeld v. Nunley*, 577 A.2d 910, 912 (Pa. 1990); *Nunamaker, et ux. V. New Alexandria Bus Co.*, 88 A.2d

---

[2] We note that Plaintiffs' claims for unjust enrichment would also be subject to dismissal as it is contrary to Pennsylvania law. Pennsylvania law recognizes unjust enrichment as quasi-contractual in nature, and the Supreme Court of Pennsylvania has long held "that the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written agreement or express contract." *Wilson Area School Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (citations omitted); *see also Benefit Trust Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985). Since Plaintiffs assert claims for unjust enrichment in the face of an express written agreement between the Parties (Pls.' First Am. Compl. ¶¶ 17, 26, and 31), and since they rely upon a breach of that written agreement to support their claims (*id*. at ¶¶ 28, 30, and 31), Plaintiffs' claims for unjust enrichment fails as a matter of law.

697 (Pa. 1952)). Since the husbands' claims for injury have been dismissed, the spouses' claims for loss of consortium will be dismissed.

### E. Request for Leave to Amend Their Pleading

Plaintiffs request leave to file an amended pleading to cure any deficiencies in the First Amended Complaint. While requests for leave to amend are liberally granted, a court may deny leave to amend where the amendment would be a futility. *In re Burlington*, 114 F.3d at 1434. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id*. (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). Plaintiffs have not offered anything to suggest that granting them leave to amend would be anything other than a futility. In both the initial, and the First Amended Complaints, Plaintiffs failed to allege that they exhausted their administrative remedies under the CBA. Defendants argued that Plaintiffs failed to first exhaust their administrative remedies available under the CBA. Plaintiffs' Response to the Defendants' Motions is completely silent as to this point. Plaintiffs have had a number of opportunities to advise the Court that they satisfied this requirement. Accordingly, we are compelled to conclude that this requirement was not satisfied, and that permitting Plaintiffs to amend their Complaint again would be futile.[3]

## IV. CONCLUSION

Plaintiffs' theory of recovery is substantially dependent upon an interpretation of the CBA. Plaintiffs' causes of action are therefore preempted by § 301. Because Plaintiffs failed to

---

[3] We note that Plaintiffs make a passing request in their Surreply to amend their Complaint to "allege an extra-CBA (i.e., outside the CBA) agreement." (Pls.' Surreply 2.) Plaintiffs do not offer any factual specifics as to what this "agreement" might entail or who the parties to it are. It appears that amending the Complaint in such a fashion would constitute an entirely new cause of action not within the scope of the Complaint as pled that could possibly include parties who are not named as Defendants here. Based upon the vagueness of this request, we are compelled deny it.

exhaust their administrative remedies under the CBA prior to filing suit, a threshold requirement of § 301, Plaintiffs' First Amended Complaint will be dismissed.

                                      **BY THE COURT:**

                                      **R. BARCLAY SURRICK, J.**